UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DANIEL STURKOL,

      Plaintiff,

v.

                                      Case No. 2:25-cv-146
                                      Hon. Jane M. Beckering

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his claim for disability insurance benefits (DIB).

Plaintiff filed an application for DIB on August 1, 2022, alleging a disability onset date of July 30, 2020.  PageID.35.  Plaintiff completed the 12th grade and had past relevant work as a janitor and carpenter helper.  PageID.49, 293.  Plaintiff listed 10 disabling conditions.[1]  An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on May 7, 2024.  PageID.35-51.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

      **I.**        **LEGAL STANDARD**

---

[1] Plaintiff's medical conditions include: fibromyalgia and balance issues; neuropathy of hands and feet; left leg nerve damage (2004); partial muscle removal (2004); high blood pressure; depression and anxiety; muscle spasms; chronic pain; walks with cane all of the time & uses walker occasionally; and pain related to neuropathy.  PageID.292.

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months.  *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step

analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant

work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir.

2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a

significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant

is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis

v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff last met the insured status requirements of the Social Security Act on June 30, 2023.  PageID.37.  The ALJ also found that plaintiff has not engaged in substantial gainful activity from the alleged onset date of July 30, 2020, through his date last insured of June 30, 2023.  *Id*. At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of: fibromyalgia; neuropathy; lumbar and cervical degenerative disc disease; degenerative joint disease of the hips; obesity; depression; anxiety; and, attention deficit hyperactivity disorder (ADHD).  PageID.37.  At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.38.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: he can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs; he can also occasionally balance, stoop, kneel, crouch, crawl; he can tolerate occasional exposure to hazards (such as moving machinery and unprotected heights); he should be permitted to use a cane while ambulating; he is able to understand, remember and carry out simple instructions, and perform simple routine tasks, in a position having only occasional changes; he is able to maintain concentration, persistence and pace for simple tasks in two-hour increments, over the course of a normal workday and work week; he can have occasional interaction with the public, co-workers and supervisors.

PageID.41.  The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work.  PageID.49.

At the fifth step, the ALJ determined that, through the date last insured, plaintiff could perform a significant number of sedentary, unskilled jobs.  PageID.49-50.  Based on the testimony of a vocational expert (VE), the ALJ found that plaintiff could perform the requirements

of occupations in the national economy such as circuit board assembler (11,100 jobs), addresser (22,500 jobs), and document preparer (16,800 jobs). PageID.50. Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 20, 2020 (the alleged onset date) through June 30, 2023 (the date last insured). *Id*.

### III.    DISCUSSION

Contrary to the Court's directive, plaintiff's counsel did not file a statement of errors.[2] The Court construes plaintiff's briefs as raising three errors.

### A.    The ALJ erred in failing to analyze some of PA Komosa's opinions.

Plaintiff states that PA Komosa authored three medical source statements regarding his physical and mental limitations. Plaintiff contends that the ALJ erred because he "only analyzed the contents of the most recent opinion authored on November 15, 2023" (Exh. 9F, PageID.1263-1266). *See* Plaintiff's Brief (ECF No. 12, PageID.1317).

The applicable regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3)

---

[2] The Notice Regarding Consent and Directing Filing of Briefs (ECF No. 6) states in pertinent part:

Plaintiff's initial brief . . . <u>must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand. Failure to identify an issue in the Statement of Errors constitutes a waiver of that issue</u>. [emphasis added]

relationship with the claimant; (4) specialization; and, (5) other factors.  *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency".  20 C.F.R. § 404.1520c(b)(2). The regulations explain "supportability" as, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The regulations explain "consistency" as, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."   20 C.F.R. § 404.1520c(c)(2).

Contrary to plaintiff's contention, the ALJ was not required to address each of PA Komosa's opinions separately.  The regulations recognize that many claims include voluminous case records[3] and include the following requirements for the ALJ to perform a "source-level articulation":

> Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

---

[3]  For example, the administrative record in the present case contains over 1250 pages.  *See* PageID.15-1287.

20 C.F.R. § 404.1520c(b)(1).

As discussed, the ALJ's decision referenced PA Komosa's November 15, 2023, medical source statement.  This statement applied to plaintiff's medical symptoms and limitations since "11/2021" and encompasses a significant portion of the relevant time period (July 30, 2020, through June 30, 2023).  *See* PageID.1266.  It appears that PA Komosa signed two other statements: September 9, 2022 (mental) (*see* Plaintiff's Brief at PageID.1313 and Exh. 2F/157-160, PageID.903-907); and, September 26, 2022 (physical) (*see* Plaintiff's Brief at PageID.1314 and Exh. 2F/145-148, PageID.891-894).   In his decision, the ALJ reviewed PA Komosa's most recent statement from November 15, 2023, as follows:

> The undersigned has also considered the November 2023 medical assessment of the claimant's work capacities completed by Eve Komosa, PA-C (Ex. 9F). PA Komosa opined the claimant could sit, stand, and walk for two hours in a regular workday, including sitting for one hour at [sic] time, standing for 10 minutes at a time, and would require periods of walking every 30 minutes for 15 minutes at a time (Ex. 9F). The claimant required an additional break of at least 15 minutes, at [sic] at-will sit/stand option, and required to elevate his legs above heart level for 50% of the time (Ex. 9F). The claimant could frequently lift up to 20 pounds and occasionally maneuver his neck, but could never, stoop, crouch, twist, or climb and could never use his upper extremities for any type of activity (Ex. 9F). The claimant would off task more than 25% of the day, could not tolerate low-stress work, and miss more than four days of work per month (Ex. 9F). He required the use of a cane.

> The undersigned accords the opinions of PA Komosa little persuasive value. The undersigned acknowledges she has an established treatment relationship with the claimant; however, her exertional and non-exertional limitations, including those of sit-stand option, need for additional breaks, leg elevation, requirement for use of a cane, off-task behavior, tolerance for low-stress work, and absenteeism are not supported by her clinical examination findings. PA Komosa's treatment notes consistently document the claimant had normal gait, station, and balance; no objective deficits in terms of motor strength, sensory functioning, coordination, or range of motion were documented through the date last insured (Exs. 1F/7, 18, 26, 32, 59, 64, 2F/6, 6F/6, 8F/25, 58, 65). Brief mental status examination findings were unremarkable; the claimant was regularly found to be in no distress, was fully alert and oriented, appropriately groomed, related sufficiently, and demonstrated an appropriate mood and affect (Exs. 1F/7, 18, 22, 26, 32, 2F/11, 21, 46, 61, 6F6, 8F/25). There is no indication in PA Komosa's treatment records for the need for

7

elevation of the legs and she provides no basis or rationale for her exertional and non-exertional physical and mental limitations; moreover, a complete preclusion of the use of the fingers, hands, and arms is unreasonable; even the claimant does not allege such extreme limitation and his independence with daily activities nonetheless fails to support them.

PA Komosa's limitations are also not consistent with other evidence of record. As detailed above, objective findings from diagnostic imaging and other studies were unremarkable; some of his symptoms, such as motor weakness of the lower extremities, were found to be inconsistent with some of his complaints (Exs. 1F/12, 21, 21, 58, 72, 95, 153, 170, 177, 206-207, 2F/72, 93, 8F/43). Examination findings of other providers showed normal motor strength, tone, and bulk of the upper extremities, along with normal coordination; no deficits in sensory functioning were noted (Exs. 1F/12, 49, 58, 72, 82, 75, 2F/21). He had some difficulty with tandem walking at times, but his gait was steady and considered normal (Exs. 1F/80, 82, 91, 2F/21, 8F/22, 40, 52).

PageID.46-47.

As discussed, the ALJ is not required to articulate "how [he] considered all of the factors for all of the medical opinions" nor is he "required to articulate how [he] considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). In his review of the opinion evidence, the ALJ referred to both the "November 2023 medical assessment" as well as "the opinions of PA Komosa". The ALJ also reviewed PA Komosa's opinions regarding plaintiff's mental impairments, noting that "she provides no basis or rationale for her exertional and non-exertional physical and mental limitations." In this regard, the ALJ performed a rather lengthy evaluation of plaintiff's mental impairments at Step 3, concluding that plaintiff did not meet the requirements of Listings 12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders), and 12.11 (Neurodevelopmental disorders). *See* PageID.39-41. Based on this record, the ALJ's evaluation of PA Komosa's opinions regarding plaintiff's impairments is consistent with the "source-level articulation" required by 20 C.F.R. § 404.1520c(b)(1). Accordingly, the ALJ did not commit error by failing to articulate how he considered "each medical opinion" from PA Komosa.

8

**B.       The ALJ erred in evaluating PA Komosa's November 15, 2023, opinion**

As discussed, plaintiff did not set forth a statement of errors.  In his brief, plaintiff states that the ALJ "created further error in his flawed analysis of PA Komosa's November 2023 opinion" and appears to contend that "[t]he ALJ's analysis of the supportability of the opinion does not satisfy the responsibility set forth in in 20 C.F.R. § 416.920c(c)(1)".  *See id.* at PageID.1317, 1324.  Plaintiff's alleged error appears to be that "PA Komosa cited symptoms, clinical findings, and [plaintiff's] course of treatment in support of the limitations, but the ALJ did not discuss this explanation."  *See id.* at PageID.1325 (citing PageID.47).  It is unclear as to the "explanation" that plaintiff seeks.  PA Komosa did not include a narrative explanation of plaintiff's condition.  Rather, PA Komosa's medical source statement (PageID.1263-1266) consists of a pre-printed fill-in-the-blank form which asks the medical source to list various aspects of the patient's condition (*e.g.*, diagnoses, symptoms, and pain) and requires the medical source to circle or check boxes to designate restrictions (*e.g.*, "how many pounds can your patient lift and carry in a competitive work situation?").  PA Komosa's statement did not explain plaintiff's condition other than to include a few phrases such as identifying the clinical findings as "abnormal neurologic exam per Neurology notes" and "the treatment and response" provided to plaintiff as "multiple medications causing drowsiness".  PageID.1263.

Here, the ALJ reviewed the medical record and concluded that the extreme limitations set forth in PA Komosa's opinions had little persuasive value and were not consistent with other evidence of record.  Based on this record, the ALJ did not commit error in his evaluation of PA Komosa's November 15, 2023, medical source statement.

**C.       The ALJ failed to properly evaluate plaintiff's subjective symptom testimony**

Finally, plaintiff contends that the ALJ failed to properly evaluate his disabling subjective symptoms.  Plaintiff's contention is without merit.  While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. Rather, objective medical evidence that confirms the existence of pain is required.  *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-35 (6th Cir. 1987).  SSR 16-3p sets out the two-step process for evaluating an individual's symptoms: (1) "We determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms;" and, (2) "We evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304 at *3-4 (Oct. 25, 2017).  *See* 20 C.F.R. §404.1529(c)(1) and (2).

Here, the ALJ applied the two-step process.  PageID.41-42.  With respect to the first step, the ALJ found that plaintiff had severe impairments of fibromyalgia, neuropathy, lumbar and cervical degenerative disc disease, degenerative joint disease of the hips, obesity, depression, anxiety, and ADHD.  PageID.37.  With respect to the second step, the ALJ found that,

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not substantially consistent with or supported by the medical evidence and other evidence in the record.

PageID.44.

In reviewing plaintiff's symptoms, the ALJ summarized plaintiff's physical complaints (PageID.42), the "extensive workup for his complaints" (PageID.42-43), and his treatment which "primarily entailed medication therapy prescribed by his primary caregiver" (PageID.43).  The ALJ observed that "[p]articipation in physical therapy for his low back pain and

reported balance issues was frequently recommended, but the claimant typically had no interest", although plaintiff did attend three sessions in early 2022 for balance complaints and several later in the year for low back pain.  PageID.43. The ALJ also reviewed plaintiff's mental health symptoms which included: depressed and irritable moods; mood swings; social anxiety: sleep disturbance; anhedonia; feelings of anger; decreased concentration; decreased frustration tolerance; distractibility and ADHD.  PageID.43-44.  However, plaintiff was not interested in treatment from his psychologist.  PageID.44.[4]

The ALJ also noted inconsistencies in plaintiff's daily activities.  PageID.44-45. While plaintiff testified "that he does no yardwork or lawnmowing", that his sons do the wood splitting and carrying, and that his wife cares for the animals, other evidence reflects that plaintiff engages in significant physical activity:

> Noted, however, is that the claimant reported he typically worked around his "farm" for several hours per day that included working in his barn with his animals (Ex. 1F/59). His physiatrist that he did "fairly heavy" work regularly on his 20-acre property, cutting/splitting wood and moving dirt (Ex. 1F/75). In March 2023, the claimant was using his tractor and doing some shoveling (Ex. 8F/65). He acknowledged at the hearing that he does "throw" wood and transport it to the house and feeds his chickens (Hearing Testimony). His spouse also reported that the claimant uses a riding lawnmower and an all-terrain vehicle, activities involving travel over uneven ground, climbing, operating hand and foot controls, and grasping the steering wheel, for instance (Ex. 8F/65). When considered with the overall record, these activities suggest that the claimant retains greater physical capacities than alleged.

PageID.45.

---

[4] In this regard, the psychologist noted on June 5, 2023 (Exh. 8F, PageID.1223):

> At this point, it is unclear as to whether or not [plaintiff] will follow up with outpatient psychotherapy. Moreover, based on his intake presentation, he does not appear to be a good candidate for psychotherapy.  [Plaintiff] is clearly not interested in being here, and it is unclear as to whether not he is open to doing this kind of work. Nonetheless, this writer went through the informed consent and treatment agreement with the patient, which is now signed and located in the chart. As with any intake, this writer discussed follow-up appointments and identifying treatment goals within the subsequent sessions. [Plaintiff] been [sic] abruptly ended the intake after he indicated that he was feeling "triggered by all of the questions" and walked out.

After reviewing plaintiff's medical record, as well as his daily activities, the ALJ concluded that "[t]he longitudinal evidence fails to support the alleged disabling frequency and severity of the claimant's symptoms from his physical impairments", "[t]he record similarly fails to support the disabling degree of mental limitation alleged by the claimant", and "[a]lso undercutting the reliability and overall persuasiveness of statements as to symptoms and their limiting effects is contradictory testimony concerning his alcohol use, which was ongoing and likely have contributed to his symptoms."  PageID.44-46.

Based on this record, the ALJ performed a comprehensive review of the extensive administrative record and properly evaluated plaintiff's alleged disabling subjective symptoms. Accordingly, the ALJ did not commit error in this evaluation.

## IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Dated: June 15, 2026                              /s/ Ray Kent
                                                  Ray Kent
                                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).